IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| CHARLOTTE CARMACK, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | Civil Action No. 3:16-CV-3500-D |
| | § | |
| PARK CITIES HEALTHCARE, LLC, | § | |
| et al., | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

In this action by plaintiffs Charlotte Carmack ("Carmack"), Teresa Miller ("Miller"),

and Jovan Aniagu ("Aniagu") seeking unpaid overtime compensation and related relief under

the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, against defendants Park

Cities Healthcare, LLC ("Park Cities Healthcare") and its owner and president, Sharon D.

Westen ("Westen"), plaintiffs move for partial summary judgment on certain claims and

defenses. For the reasons that follow, the court grants the motion in part and denies in it part.

I

Carmack, Miller, and Aniagu are former hourly-paid home health employees of Park

Cities Healthcare, which is a third-party provider of certified nursing aides, certified medical

assistants, and other home health employees.[1] Westen is Park Cities Healthcare's founder,

---

[1]In deciding plaintiffs' motion for partial summary judgment, the court views the evidence in the light most favorable to defendants as the summary judgment nonmovants and draws all reasonable inferences in their favor. *See, e.g., Owens v. Mercedes-Benz USA, LLC*, 541 F.Supp.2d 869, 870 n.1 (N.D. Tex. 2008) (Fitzwater, C.J.) (citing *U.S. Bank Nat'l Ass'n*

president, sole shareholder, owner/administrator, and nurse.  Park Cities Healthcare hired Carmack and Aniagu in 2011, and hired Miller in 2013.  Carmack and Miller held the title of Certified Nursing Aid, and Aniagu was classified as a Medical Assistant.  From May 2015 until November 2016 Miller also served as a Certified Nursing Aid supervisor and performed additional duties, such as assisting Westen with new employee orientation.  Plaintiffs primarily provided in-home care to ill or injured elderly individuals.  They generally worked 12-hour shifts, during which, *inter alia*, they performed medically-related services, such as checking vital signs (including blood pressure, pulse, and temperature), assisted the client with daily activities (including dressing, grooming, feeding, bathing, toileting, and transferring to/from bed), and housework (including meal preparation, light housework, and assistance with taking medications).

Plaintiffs reported to Westen and were not employed by individual patients, the patients' families, or the patients' households.  Plaintiffs performed all work in private homes that Park Cities Healthcare did not own, manage, or rent.

Plaintiffs were regularly scheduled to work 12-hour shifts at least five days per week, but their actual hours varied.  Prior to December 2016, in weeks in which plaintiffs worked greater than 40 hours, they received straight pay, or their regular hourly rate of pay, for the hours in excess of 40.  Around December 2016, defendants began paying overtime pay at a rate of 1½ times regular pay to employees for hours worked in excess of 40 hours per week.

---

*v. Safeguard Ins. Co.*, 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.)).

On December 26, 2016 Carmack filed this action on behalf of herself and all others similarly situated, alleging that defendants had willfully violated the FLSA, 29 U.S.C. § 207(a)(1), and seeking recovery of unpaid overtime compensation based on a two-year statute of limitations period from January 1, 2015 until the first week of December 2016,[2] and an equal amount of liquidated damages, as well as attorney's fee and costs. Carmack alleges that, during the two-year limitations period, she worked 1,432 overtime hours, Miller worked 2,066.25 overtime hours, and Aniagu worked 1,903 overtime hours. During the two-year limitations period, Carmack earned between $11 and $12 per hour; Miller earned between $11 and $12.50 per hour; and Aniagu earned $12 per hour. Miller received additional pay for her role as a Certified Nursing Aid supervisor, including $50 per pay period to carry Park Cities Healthcare's on-call phone and a varying hourly rate for her time assisting with new employee orientation.

Miller resigned from Park Cities Healthcare on November 2, 2016. Park Cities Healthcare terminated Carmack's employment on January 13, 2017. And Aniagu resigned on February 17, 2017. Plaintiffs filed a second amended complaint on December 5, 2017,[3] which also alleged that defendants had retaliated against Carmack and Aniagu based on their FLSA activity. As of the time of filing this memorandum opinion and order, defendants have

---

[2]Carmack seeks overtime compensation from January 5, 2015 through December 4, 2016. Miller seeks overtime compensation from January 5, 2015 through November 6, 2016, the week in which she resigned. Aniagu seeks overtime compensation for January 5, 2015 through December 4, 2016.

[3]Plaintiffs filed a first amended complaint on February 14, 2017.

not filed an answer to the second amended complaint.

Plaintiffs now move for partial summary judgment, seeking summary judgment on their FLSA overtime claim, their FLSA retaliation claim, and defendants' affirmative defenses of the Companionship Services overtime exemption and good faith under 29 U.S.C. § 260.  Defendants oppose the motion.

## II

Because plaintiffs will have the burden of proof at trial on their FLSA claims, to obtain summary judgment they "must establish 'beyond peradventure all of the essential elements of the claim[s.]'" *Bank One, Tex., N.A. v. Prudential Ins. Co. of Am.*, 878 F. Supp. 943, 962 (N.D. Tex. 1995) (Fitzwater, J.) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)).  This means that plaintiffs must demonstrate that there are no genuine and material fact disputes and that they are entitled to summary judgment as a matter of law. *See, e.g.*, *Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003).  "The court has noted that the 'beyond peradventure' standard is 'heavy.'"  *Carolina Cas. Ins. Co. v. Sowell*, 603 F.Supp.2d 914, 923-24 (N.D. Tex. 2009) (Fitzwater, C.J.) (quoting *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007) (Fitzwater, J.)).

Concerning defendants' affirmative defenses, as to which plaintiffs will not have the burden of proof at trial, plaintiffs can meet their summary judgment obligation by pointing the court to the absence of evidence to support the affirmative defense in question.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Once they do so, defendants must go

beyond their pleadings and designate specific facts showing that there is a genuine issue for

trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)

(per curiam).  An issue is genuine if the evidence is such that a reasonable jury could return

a verdict in favor of defendants.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986).  The failure of defendants to produce proof as to any essential element renders all

other facts immaterial.  *See Trugreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623

(N.D. Tex. 2007) (Fitzwater, J.).  Summary judgment is mandatory if defendants fail to meet

this burden.  *See Little*, 37 F.3d at 1076.

### III

The court first addresses plaintiffs' FLSA overtime compensation claim.

### A

The FLSA provides that "no employer shall employ any of [her] employees . . . for

a workweek longer than forty hours unless such employee receives compensation for [her]

employment in excess of the hours above specified at a rate not less than one and one-half

times the regular rate at which [she] is employed."  29 U.S.C. § 207(a)(1).  "An employee

bringing an action for unpaid overtime compensation must first demonstrate by a

preponderance of the evidence: (1) that there existed an employer-employee relationship

during the unpaid overtime periods claimed; (2) that the employee engaged in activities

within the coverage of the FLSA; (3) that the employer violated the FLSA's overtime wage

requirements; and (4) the amount of overtime compensation due."  *Johnson v. Heckmann*

*Water Res. (CVR), Inc.*, 758 F.3d 627, 630 (5th Cir. 2014).

- 5 -

Once plaintiffs establish a prima facie case, "the burden shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 441 (5th Cir. 2005) (citing *Anderson v. Mount Clemens Pottery Co.*, 328 U.S. 680, 687-88 (1946)). "If the employer fails to produce such evidence, the court may then award damages to the employee even though the result may only be approximate." *Id.*

A cause of action for unpaid overtime brought under the FLSA "shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a). The FLSA plaintiff bears the burden of showing that an employer's violation was willful. *See Cox v. Brookshire Grocery Co.*, 919 F.2d 354, 356 (5th Cir. 1990). To establish a willful violation, the plaintiff "must show that the employer either knew or showed reckless disregard as to whether its conduct was prohibited by the [FLSA]." *Id.* (citing *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)). "The Supreme Court has specifically stated that the word 'willful' refers to conduct that is voluntary, deliberate, and intentional, and not merely negligent." *Dalheim v. KDFW-TV*, 706 F. Supp. 493, 511 (N.D. Tex. 1988) (Fitzwater, J.) (citing *McLaughlin*, 486 U.S. at 128), *aff'd*, 918 F.2d 1220 (5th Cir. 1990). Thus a negligent violation of the FLSA is not willful, "[n]or is a good faith but incorrect assumption that a pay plan complied with the FLSA." *Johnson v. Big Lots Stores, Inc.*, 604 F.Supp.2d 903, 924 (E.D. La. 2009) (citing

- 6 -

*McLaughlin*, 486 U.S. at 135).  In this case, plaintiffs seek overtime compensation during the two-year limitations period, so whether the employer's conduct was willful is not at issue for the purposes of determining plaintiffs' motion for summary judgment on their FLSA overtime claim.

B

The court now determines whether plaintiffs have established beyond peradventure a prima facie case of an FLSA overtime violation.  The court considers first whether plaintiffs have established that an employer-employee relationship existed between plaintiffs and defendants during the two-year limitations period.

1

Under the FLSA, an employer is defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. § 203(d).  This court applies the economic reality test when determining a party's status as an employer under the FLSA.  *See, e.g., Gray v. Powers*, 673 F.3d 352, 354 (5th Cir. 2012).  Under the economic reality test, the court evaluates "whether the alleged employer: (1) possessed the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records."  *Id.* at 355 (citation and internal quotation marks omitted). A party need not, however, establish each element in every case.  *Id.* at 357.  "The dominant theme in the case law is that those who have operating control over employees within companies may be individually liable for FLSA violations committed by the companies."

- 7 -

*Martin v. Spring Break '83 Prods., LLC*, 688 F.3d 247, 251 (5th Cir. 2012) (citation and internal quotation marks omitted).  Moreover, "[t]he remedial purposes of the FLSA require the courts to define 'employer' more broadly than the term would be interpreted in traditional common law applications." *McLaughlin v. Seafood, Inc.*, 867 F.2d 875, 877 (5th Cir. 1989) (per curiam), *modifying* 861 F.2d 450 (5th Cir. 1988).

2

In this case, it is undisputed that plaintiffs had an employer-employee relationship with Park Cities Healthcare.  Defendants maintain, however, that Westen was not an plaintiffs' employer under the FLSA.

The summary judgment evidence establishes beyond peradventure that Westen had the power to hire and fire on behalf of Park Cities Healthcare.  She managed the payroll process, set the pay rates for employees, and oversaw the process of updating employee policies and procedures.  She also determined the terms to be included in Park Cities Healthcare employment agreement.  And she was the final decisionmaker regarding changes in policies, such as deciding to begin paying employees overtime in December 2016.  The undisputed facts show that Westen exercised operating control over plaintiffs.  Plaintiffs have therefore established beyond peradventure that both Park Cities Healthcare and Westen were plaintiffs' employers under the FLSA.

C

The court now turns to the second element and decides whether plaintiffs have established beyond peradventure that they were employees engaged in activities within the

coverage of the FLSA.

1

Under 29 U.S.C. § 207(a), plaintiffs must prove they were "employees engaged 'in the production of goods for commerce' ('individual coverage') or 'employed in an enterprise engaged in commerce or in the production of goods for commerce' ('enterprise coverage')." *Martin v. Bedell*, 955 F.2d 1029, 1032 (5th Cir. 1992) (citing 29 U.S.C. § 207(a)(1)); *Lindgren v. Spears*, 2010 WL 5437270, at *3 (S.D. Tex. Dec. 27, 2010) (Rosenthal, J.) (holding that FLSA coverage must be alleged because it is element of claim).

The FLSA defines the operative language as to enterprise coverage, but it does not define it as to individual coverage.  *See, e.g.*, *Mendoza v. Detail Solutions, LLC*, 911 F.Supp.2d 433, 439 (N.D. Tex. 2012) (Fish, J.).  For purposes of establishing individual coverage, the FLSA does not define what it means for an employee to be "engaged in commerce."  The Fifth Circuit has adopted a "practical test," which asks "whether the work is so directly and vitally related to the functioning of an instrumentality or facility of interstate commerce as to be, in practical effect, a part of it, rather than isolated local activity." *Sobrinio v. Med. Ctr. Visitor's Lodge, Inc.*, 474 F.3d 828, 829 (5th Cir. 2007) (per curiam) (quoting *Mitchell v. H.B. Zachry Co.*, 362 U.S. 310, 324 (1960)) (internal quotation marks omitted).  "Either individual or enterprise coverage is enough to invoke FLSA protection." *Martin*, 955 F.2d at 1032.

2

The FLSA recognizes that "the employment of persons in domestic service in

households affects commerce." 29 U.S.C. § 202(a)(5). "The term domestic service employment means services of a household nature performed by an employee in or about a private home (permanent or temporary)." 29 C.F.R. § 552.3. It includes "services performed by employees such as . . . nurses . . . caretakers . . . home health aides, [and] personal care aides." *Id.*

In this case, it is undisputed that plaintiffs provided domestic service in private households as part of their employment by defendants. Plaintiffs performed their duties in the private homes of Park Cities Healthcare's clients. The Certified Nurse Aid job description on Park Cities Healthcare's website outlines some responsibilities, including cooking, light housekeeping, and ensuring timely provision of ordered treatments and medications. Plaintiffs performed services such as recording vital signs, including blood pressure, pulse, and temperature. They also assisted patients with dressing, grooming, feeding bathing, toileting, and transfer to and from bed. Because plaintiffs' responsibilities are akin to those of caretakers and home health aides, and the summary judgment record does not support the reasonable finding that plaintiffs were engaged in an isolated local activity, the court holds that plaintiffs have established beyond peradventure that they are covered under the FLSA's individual coverage provision.

D

The court turns next to the question whether plaintiffs have shown that defendants violated the FLSA's overtime wage requirements.

The parties do not dispute the total hours worked or total amount of gross wages

plaintiffs received during each two-week pay-period.  It is undisputed that Carmack worked

1,432 overtime hours, Miller worked 2,066.25 overtime hours, and Aniagu worked 1,903

overtime hours.  It is also undisputed that defendants compensated plaintiffs for their pre-

December 2016 overtime hours at their regular rate of pay.[4]  Plaintiffs have therefore

established beyond peradventure that defendants violated the FLSA by failing to pay the

specified rate of "not less than one and one-half times the regular rate at which [plaintiffs

were] employed" for hours in excess of 40 hours during workweeks longer than 40 hours.

E

Plaintiffs have also established beyond peradventure the fourth element of an FLSA

overtime claim: the compensation they are owed.  The FLSA requires that employers pay an

overtime premium of "a rate not less than one and one-half times the *regular rate* at which

he is employed." 29 U.S.C. § 207(a)(1) (emphasis added).  The "regular rate" is "the hourly

rate actually paid the employee for the normal, nonovertime workweek for which [she] is

employed[.]" 29 C.F.R. § 778.108 (citing *Walling v. Youngerman-Reynolds Hardwood Co.*,

325 U.S. 419 (1945)).

"The regular hourly rate of pay of an employee is determined by dividing [her] total

remuneration for employment (except statutory exclusions) in any workweek by the total

number of hours actually worked by [her] in that workweek for which such compensation

---

[4]Westen acknowledged that "[Park Cities Healthcare] never paid time and a half overtime when an employee worked over 40 hours in a workweek before December 2016[.]" Ps. App. 16.

was paid."  29 C.F.R. § 778.109; *Leal v. Magic Auto Touch Up, Inc.*, 2018 WL 297339, at

*8 (N.D. Tex. Jan. 4, 2018) (Fitzwater, J.) (citing *Pittman v. McClain's R.V., Inc.*, 2013 WL

12139092, at *6 (E.D. Tex. June 12, 2013)).  Where the employee is paid on an hourly basis,

as were Carmack and Aniagu, the hourly rate is the "regular rate."  29 C.F.R. § 778.110.

When an employee is compensated at two or more rates, as was Miller, the regulations

provide:

> [w]here an employee in a single workweek works at two or
> more different types of work for which different nonovertime
> rates of pay (of not less than the applicable minimum wage)
> have been established, [her] regular rate for that week is the
> weighted average of such rates.  That is, [her] total earnings
> (except statutory exclusions) are computed to include [her]
> compensation during the workweek from all such rates, and are
> then divided by the total number of hours worked at all jobs.

29 C.F.R. § 778.115.

Plaintiffs have calculated their regular rate of pay based on pay records produced by

defendants for purposes of this lawsuit.[5]  They divide the gross wages each plaintiff received

for each two-week pay period by the total number of hours the plaintiff in question actually

_____

[5]Defendants object to the data underlying plaintiffs' calculations on a number of
grounds, including that plaintiffs do not verify the precise dates of their employment or their
precise rate of pay on a particular date.  The court holds that defendants have not offered
sufficient grounds for the court to exclude plaintiffs' calculations.  Plaintiffs each aver that
"[t]hese hours worked and the gross pay figures for Park Cities' two-week pay periods were
copied from Park Cities' pay records received in this case."  Ps. App. 76, 85, 109.  These
records match plaintiffs' statements about the terms of their employment.  For example,
Aniagu states that she was paid $12 per hour for her entire employment, and her pay
spreadsheet and calculations show a $12 per hour wage throughout 2015.  The court thus
concludes that plaintiffs' evidence of overtime compensation owed is competent summary
judgment evidence and considers it accordingly.

worked during that pay period.  Carmack's and Aniagu's regular rates equal their hourly rates, and Miller's regular rate is approximately a weighted average of her different compensation rates.  Plaintiffs then calculate their overtime hours biweekly by taking the total number of hours they worked in the time period and subtracting 80 hours.  They multiply these overtime hours by the half time owed by Park Cities Healthcare based on their regular rate (regular rate divided by 2) to arrive at a number for total overtime compensation owed.  These calculations show that defendants owe Carmack $8,072.25, Miller $12,774.67, and Aniagu $11,476.42 in overtime compensation.

The U.S. Department of Labor regulations provide, however, that "a single workweek" is the standard, and that averaging of hours over two or more weeks is not permitted.  *Pittman*, 2013 WL 12139092, at *6 (citing 29 C.F.R. § 778.104; *Owopetu v. Nationwide CATV Auditing Servs., Inc.*, 2011 WL 883703, at *9 (D. Vt. Mar. 11, 2011); *Viciedo v. New Horizons Computer Learning Ctr. of Columbus, Ltd.*, 246 F.Supp.2d 886, 895 (S.D. Ohio 2003)).

In this case, it is undisputed that defendants maintained records of hours worked by employees on a biweekly basis only.[6]  Where, as here "the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes a more difficult problem arises.  The solution, however, is not to penalize the employee by denying him any recovery

---

[6]In her deposition, Westen testified that Park Cities Healthcare never tracked employee hours on a seven-day workweek basis and only tracked hours on a biweekly basis. Ps. App. 29.

on the ground that he is unable to prove the precise extent of uncompensated work."
*Anderson*, 328 U.S. at 687.  "[A]n employee has carried out his burden if he proves that he
has in fact performed work for which he was improperly compensated and if he produces
sufficient evidence to show the amount and extent of that work as a matter of just and
reasonable inference."  *Id.*

Because defendants do not dispute plaintiffs' method and have not shown that another,
more accurate method is available to plaintiffs, the court concludes that plaintiffs have justly
and reasonably inferred their regular rates from the available biweekly data.  *See, e.g., Olibas
v. Native Oilfield Servs., LLC*, 104 F.Supp.3d 791, 804 (N.D. Tex. 2015) (Boyle, J.) (quoting
*Anderson*, 328 U.S. at 688) ("The employer cannot be heard to complain that the damages
lack the exactness and precision of measurement that would be possible had he kept records
in accordance with his legal obligations."), *aff'd sub nom. Olibas v. Barclay*, 838 F.3d 442
(5th Cir. 2016).  The court concludes that plaintiffs have demonstrated beyond peradventure
that their calculations are reasonable, *see Solis v. Ronin Risk USA, LLC*, 2010 WL 1253978,
at *3 (D. Utah Mar. 24, 2010) (employing same method), and that plaintiffs have carried their
heavy burden to show the overtime compensation they are owed.

F

For the reasons explained, the court holds that plaintiffs have established beyond
peradventure a prima facie case of an FLSA overtime violation.  Accordingly, to avoid
summary judgment on this claim, defendants must show there is a genuine issue of material
fact concerning their Companionship Services affirmative defense.

IV

Defendants maintain that plaintiffs are not entitled to overtime compensation for the period of their employment prior to December 31, 2015 because defendants are exempt from such compensation requirements under the Companion Services exemption.

A

"If the employer claims that the suing employee is exempt from the overtime requirement, then the employer has the burden of proving that the employee falls within the claimed exempted category." *Johnson*, 758 F.3d at 630 (citing *Samson v. Apollo Res., Inc.*, 242 F.3d 629, 636 (5th Cir. 2001)). FLSA exemptions are construed narrowly against the employer, *Roche v. S-3 Pump Services, Inc.*, 154 F.Supp.3d 441, 446 (W.D. Tex. 2016) (citing *Allen v. Coil Tubing Services, L.L.C.*, 755 F.3d 279, 283 (5th Cir. 2014)), and an employer "must prove facts by a preponderance of the evidence that show the exemption is 'plainly and unmistakably' applicable," *Meza v. Intelligent Mexican Marketing, Inc.*, 720 F.3d 577, 581 (5th Cir. 2013).

The Companionship Services exemption exempts from FLSA overtime compensation protection

> any employee employed on a casual basis in domestic service employment to provide babysitting services or any employee employed in *domestic service employment* to provide *companionship services* for individuals who (because of age or infirmity) are unable to care for themselves (as such terms are defined and delimited by regulations of the Secretary)[.]

- 15 -

29 U.S.C. § 213(a)(15) (West 2018) (emphasis added).[7]  As noted above, "[t]he term domestic service employment means services of a household nature performed by an employee in or about a private home (permanent or temporary)."  29 C.F.R. § 552.3.

In October 2013 the U.S. Department of Labor ("DOL") amended its regulations.  *See Application of the Fair Labor Standards Act to Domestic Service*, 78 Fed. Reg. 60,454 (Oct. 1, 2013) (codified at 29 C.F.R. pt. 552) ("Amended Regulations").  The Amended Regulations made two changes to the Companionship Services exemption that were scheduled to take effect on January 1, 2015.  First, they narrowed the scope of activities that qualify as companionship services.[8]  The Amended Regulations define "companionship services" as

> the *provision of fellowship and protection* for an elderly person or person with an illness, injury, or disability who requires assistance in caring for himself or herself.  The provision of fellowship means to engage the person in social, physical, and mental activities, such as conversation, reading, games, crafts,

---

[7]The Companionship Services exemption also provides an exemption from minimum wage protections.  *See* 29 U.S.C. § 213(a)(15).

[8]Through December 31, 2014, DOL defined companionship services as:

> those services which provide fellowship, *care*, and protection for a person who, because of advanced age or physical or mental infirmity, cannot care for his or her own needs.  Such services may include household work related to the care of the aged or infirm person such as meal preparation, bed making, washing of clothes, and other similar services.

29 C.F.R. § 552.6 (repealed Dec. 31, 2014) (emphasis added).  The DOL also included the performance of general household work, so long as it was incidental, or not in excess of 20% of the total weekly hours worked.  *Id.*

> or accompanying the person on walks, on errands, to appointments, or to social events. The provision of protection means to be present with the person in his or her home or to accompany the person when outside of the home to monitor the person's safety and well-being.

29 C.F.R. § 552.6 (emphasis added). The term companionship services, as revised, includes the provision of care only if it is "provided attendant to and in conjunction with the provision of fellowship and protection and if it does not exceed 20 percent of the total hours worked per person and per workweek." *Id.*

> The provision of care means to assist the person with activities of daily living (such as *dressing, grooming, feeding, bathing, toileting, and transferring*) and instrumental activities of daily living, which are tasks that enable a person to live independently at home (such as *meal preparation, driving, light housework, managing finances, assistance with the physical taking of medications, and arranging medical care*).

*Id.* (emphasis added). The term "companionship services" does not include the provision of medically related services.[9]

Second, the Amended Regulations foreclose third-party employers from relying on

---

[9]The regulations provide:

> The term companionship services *does not include the performance of medically related services* provided for the person. The determination of whether services are medically related is based on *whether the services typically require and are performed by trained personnel, such as registered nurses, licensed practical nurses, or certified nursing assistants*; the determination is not based on the actual training or occupational title of the individual performing the services.

*Id.* (emphasis added).

- 17 -

the Companionship Services exemption:

> [t]hird party employers of employees engaged in companionship services within the meaning of § 552.6 may not avail themselves of the minimum wage and overtime exemption provided by section 13(a)(15) of the Act, even if the employee is jointly employed by the individual or member of the family or household using the services. However, the individual or member of the family or household, even if considered a joint employer, is still entitled to assert the exemption, if the employee meets all of the requirements of § 552.6.

29 C.F.R. § 552.109.

Before the Amended Regulations took effect, both the narrowed definition of companion services and the third party provision were challenged and vacated by the District of Columbia. *See Home Care Ass'n of Am. v. Weil*, 76 F.Supp.3d 138, 147-48 (D.D.C. 2014); *Home Care Ass'n of Am. v. Weil*, 78 F.Supp.3d 123, 130 (D.D.C. 2015). On appeal, the D.C. Circuit vacated the district court's orders. *See Home Care Ass'n of Am. v. Weil*, 799 F.3d 1084, 1097 (D.C. Cir. 2015). Following the D.C. Circuit's decision, the DOL issued a policy statement on September 14, 2015 noting that it would not begin enforcing the Amended Regulations until 30 days after the D.C. Circuit issued its mandate. *See* Application of the Fair Labor Standards Act to Domestic Service; Announcement of 30-Day Period of Non-Enforcement, 80 Fed. Reg. 55,029 (Sept. 14, 2015) (codified at 29 C.F.R. pt. 552). The D.C. Circuit issued its mandate on October 13, 2015, and the DOL issued a second policy statement on October 27, 2015, stating that the non-enforcement period would conclude on November 12, 2015. *See* 80 Fed. Reg. 65,646 (Oct. 27, 2015). Both policy statements described the Amended Regulations as having an effective date of January 1,

2015.

## B

Assuming *arguendo* plaintiffs were engaged in "companionship services,"[10] it is undisputed that defendants are third-party employers who would be foreclosed under the Amended Regulations from relying on the Companionship Services exemption. The parties' dispute turns instead on the effective date of the Amended Regulations.

Plaintiffs maintain that, because the amended companionship services exemption precludes third-party employers from relying on the exemption as of January 1, 2015, defendants were subject to the overtime requirements of the FLSA. Defendants respond that the Amended Regulations did not become effective until December 31, 2015, and that defendants are therefore not liable for overtime compensation until after that date.

The court joins a majority of district courts—including two in the Fifth Circuit—that hold that the effective date of the Amended Regulations is January 1, 2015. *See Hypolite v. Health Care Servs. of N.Y. Inc.*, 256 F.Supp.3d 485, 492 (S.D.N.Y. 2017) (noting that "overwhelming majority of well-reasoned opinions" conclude that effective date is January 1, 2015); *York v. Advocates for Juvenile & Adult Rights*, 2018 WL 438196, at *5 (E.D. La. Jan. 16, 2018); *Brown v. Body & Soul Servs., Inc.*, 2017 WL 2198192, at *4 n.3 (W.D. La. May 2, 2017), *report and recommendation adopted*, 2017 WL 2198623 (W.D. La. May 18,

---

[10]Because the court holds that defendants are precluded from invoking the Companionship Services exemption based on their status as third-party employers, the court does not reach defendants' arguments that plaintiffs' duties did not fall under the definition of companionship services.

2017); *but see Sanchez v. Caregivers Staffing Servs., Inc.*, 2017 WL 380912, at *2 (E.D. Va. Jan. 26, 2017).

The majority of the cases that hold that the effective date of the Amended Regulations is January 1, 2015 rely on the presumption of retroactivity of judicial decisions. *See, e.g.,York*, 2018 WL 438196, at *5 (citing *Harper v. Va. Dep't of Taxation*, 509 U.S. 86 (1993)).

> When [a court] applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate the announcement of the rule.

*Harper*, 509 U.S. at 86. Thus "when the D.C. Circuit held that the third-party exemption was valid, this holding applied to all prospective defendants for any period after the rule went into effect on January 1, 2015." *Brittmon v. Upreach, LLC*, 285 F.Supp.3d 1033, 1039 (S.D. Ohio 2018) (internal citation and quotation marks omitted). Accordingly, the court holds that plaintiffs are entitled to collect overtime compensation owed from January 1, 2015 and after that date, and that the Companion Services exemption does not apply effective January 1, 2015.

Citing *Bangoy v. Total Homecare Solutions, LLC*, 2015 WL 12672727, at *3 (S.D. Ohio Dec. 21, 2015), defendants maintain that, because they were entitled to rely on the District of Columbia's vacatur of the Amended Regulations, the application of the retroactivity presumption places them in an untenable position. *Id.* ("[Defendant] could have complied with the vacated rule at the risk of paying [plaintiffs] overtime wages to which they

were not entitled if the Court of Appeals affirmed the district court's judgment.   Or, [defendant] could have done what it did here, rely on the vacatur of the rule but then, according to [plaintiffs], be liable to them for FLSA damages if the Court of Appeals reversed the district court's judgment.").   The court disagrees.

Defendants have pointed to no special circumstances[11] that suggest the court should deviate from a straightforward application of the presumption of retroactivity.   *See Kinkead v. Humana*, Inc., 206 F.Supp.3d 751, 754 (D. Conn. 2016) (citing *Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749, 758-59 (1995) (re-affirming *Harper* and rejecting authority of a court absent "special circumstances" to exercise remedial discretion to create an exception to retroactive application of a judicial decision)); *Nat'l Fuel Gas Supply Corp. v. F.E.R.C.*, 59 F.3d 1281, 1288 (D.C. Cir. 1995) ("Thus, to the extent that a court may . . . still depart from the norm of retroactive application based upon a party's reliance interest, its authority to do so has been limited to the most compelling circumstances.").

Defendants posit that the DOL's decision to suspend enforcement of the Amended Regulations until the D.C. Circuit issued its mandate indicates that the rule should not be given retroactive effect.   *See Bangoy*, 2015 WL 12672727, at * 3.   The DOL, however, in its two policy statements described the Amended Regulations as having an effective date of

---

[11]Special circumstances include: (1) an alternative way of curing the constitutional violation; or (2) a previously existing, independent legal basis for denying relief, or (3) a well-established general legal rule, such as qualified immunity, that trumps the new rule of law, which general rule reflects both reliance interests and other significant policy justifications, or (4) a principle of law that limits the principle of retroactivity itself. *Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749, 750 (1995).

January 1, 2015.  *See Lewis-Ramsey v. Evangelical Lutheran Good Samaritan Soc'y*, 215 F.Supp.3d 805, 810 (S.D. Iowa 2016).  And defendants provide no argument for why a government agency's enforcement policy applies to private rights of action.  *Id.*

Given that defendants had notice of the requirements of the Amended Regulations, *see Kinkead*, 206 F.Supp.3d at 755 ("The DOL allowed more than a year from its promulgation of the new rule in 2013 until its effective date in 2015."), any supposed reliance interest does not justify suspending the retroactivity presumption and allowing them to circumvent liability.  *See Lewis-Ramsey*, 215 F.Supp.3d at 810 ("[I]t strikes the Court as far more 'unfair' to allow Defendant to escape liability for nearly a year's worth of overtime wages based on a district court decision that was ultimately deemed to be error.").

Because the effective date of the Amended Regulations is January 1, 2015, plaintiffs have shown as a matter of law that defendants are not covered under Companionship Services exemption.  Accordingly, the court grants plaintiffs' motion for summary judgment as to defendants' Companionship Services affirmative defense.

V

The court now turns to plaintiffs' motion for summary judgment on their FLSA retaliation claim.

A

The FLSA prohibits an employer from "discharg[ing] or in any other manner discriminat[ing] against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter[.]"  29

- 22 -

U.S.C. § 215(a)(3).  Because plaintiffs rely on circumstantial evidence to support their FLSA

retaliation claim, they must proceed under the familiar *McDonnell Douglas* burden-shifting

framework.  *See Hagan v. Echostar Satellite, L.L.C.*, 529 F.3d 617, 624 (5th Cir. 2008)

("Although *McDonnell Douglas* was a Title VII case, the burden-shifting framework

established therein has been adapted and applied to cases under the . . . FLSA.").

Plaintiffs must first demonstrate a prima facie case for retaliation by showing that (1)

they engaged in protected activity, (2) an adverse employment action occurred, and (3) a

causal link existed between the protected activity and the adverse employment action.  *See,*

*e.g., Blackburn v. Cypress Equities I, LP*, 2014 WL 4771765, at *8 (N.D. Tex. Sept. 25,

2014) (Fitzwater, C.J.) (citing *Walker v. Norris Cylinder Co.*, 2005 WL 2278080, at *9 (N.D.

Tex. Sept. 19, 2005) (Fitzwater, J.)); *Hagan*, 529 F.3d at 624 (citation omitted).  As to the

third element, the requirement that a plaintiff show at the prima facie case stage a "causal

link" between a protected activity and an adverse employment action is "much less stringent"

than the "but-for" causation that a jury must find.  *Montemayor v. City of San Antonio*, 276

F.3d 687, 692 (5th Cir. 2001); *see also Khanna v. Park Place Motorcars of Hous., Ltd.*, 2000

WL 1801850, at *4 (N.D. Tex. Dec. 6, 2000) (Fitzwater, J.) (characterizing this prima facie

case burden as "minimal").

If plaintiffs establish a prima facie case, the burden shifts to defendants to articulate

a legitimate, nonretaliatory reason for the alleged retaliatory action taken.  *Hagan*, 529 F.3d

at 624; *Walker*, 2005 WL 2278080, at *9.  This burden is one of production, not of proof.

*See Wooten v. Fed. Express Corp.*, 2007 WL 63609, at *16 (N.D. Tex. Jan. 9, 2007)

(Fitzwater, J.), *aff'd*, 325 Fed. Appx. 297 (5th Cir. 2009).

If defendants meet their production burden, the burden shifts back to plaintiffs to show that their engaging in conduct protected by the FLSA was the "but for cause" of the adverse employment decision. *See Kanida v. Gulf Coast Med. Personnel LP*, 363 F.3d 568, 580 (5th Cir. 2004) ("This court has repeatedly stated that in retaliation cases [under the FLSA] the employee must prove that the adverse employment action would not have occurred 'but for' plaintiff's protected activity." (citing cases)); *see also Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 339 (2013) ("Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action."); *Little v. Technical Specialty Prods. LLC*, 2013 WL 5755333, at *4 (E.D. Tex. Oct. 23, 2013) (noting that Fifth Circuit has repeatedly required that the plaintiff establish "but for" causation, which "is consistent with the Supreme Court's holding in *Nassar*, and, thus, the standard for FLSA retaliation cases was not altered by the *Nassar* decision.").

A plaintiff may establish "but for" causation by proving "by a preponderance of the evidence that the reasoning presented by the defendant[s] is a pretext for retaliation." *Smith v. Sw. Bell Tel. Co.*, 456 Fed. Appx. 489, 492 (5th Cir. 2012) (per curiam) (quoting *Mauder v. Metro. Transit Auth. of Harris Cnty.*, Tex., 446 F.3d 574, 584 (5th Cir. 2006)) (internal quotation marks omitted). A plaintiff can demonstrate pretext "by showing that the employer's proffered explanation is unworthy of credence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (citation and internal quotation marks omitted). "An explanation is false or unworthy of credence if it is not the real reason for the adverse

employment action." *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003).

B

Plaintiffs maintain that, because defendants did not timely file an answer or other responsive pleading to the second amended complaint, under Fed. R. Civ. P. 8(b)(6) defendants have admitted plaintiffs' allegations related to the FLSA retaliation claim.  In their motion for summary judgment, plaintiffs have provided no additional evidence or argument pertaining to defendants' allegedly retaliatory actions.

The court will assume *arguendo* that defendants were required to file an answer admitting or denying allegations asserted against them regarding plaintiffs' new FLSA retaliation claim within 14 days of the service of the second amended complaint.  *See* Rule 15(a)(3) (providing that "Unless the court orders otherwise, any required response to an amended pleading must be made within the time remaining to respond to the original pleading or within 14 days after service of the amended pleading, whichever is later.").  The court will also assume *arguendo* that, because defendants did not file an answer denying plaintiffs' allegations, the allegations of the second amended complaint are deemed admitted under Rule 8(b)(6).  *Id.* (providing that "An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied. If a responsive pleading is not required, an allegation is considered denied or avoided.").  Even so, the allegations of the second amended complaint are too conclusory to satisfy the

- 25 -

heavy burden of establishing but for causation beyond peradventure.[12]  Accordingly, the court denies plaintiffs' motion for summary judgment on their retaliation claim.

## VI

Finally, the court addresses plaintiffs' motion for summary judgment on defendants' good faith defense.

## A

The FLSA provides that an employer who violates the requirement to pay overtime compensation "shall be liable to the employee or employees affected in the amount of . . . their unpaid overtime compensation . . . and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b).[13]  Although the language of § 216(b) is mandatory, Congress thereafter added a provision that grants district courts the sound discretion not to award liquidated damages if the employer shows (1) "that the act or omission giving rise to such action was in good faith" and (2) "that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA]."  29 U.S.C. § 260; *Barcellona v. Tiffany*

---

[12]"When this court denies rather than grants summary judgment, it typically does not set out in detail the evidence that creates a genuine issue of material fact." *Valcho v. Dall. Cnty. Hosp. Dist.*, 658 F.Supp.2d 802, 812 n.8 (N.D. Tex. 2009) (Fitzwater, C.J.) (citing *Swicegood v. Med. Protective Co.*, 2003 WL 22234928, at *17 n.25 (N.D. Tex. Sept. 19, 2003) (Fitzwater, J.)).

[13] 29 U.S.C. § 216(b) provides, in pertinent part:

> Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages.

*English Pub, Inc.*, 597 F.2d 464, 468 (5th Cir. 1979) (minimum wage case); *see Hays v. Republic Steel Corp.*, 531 F.2d 1307, 1309 n.3 (5th Cir. 1976) (age discrimination case) (holding that employer must show failure was in good faith and predicated upon such reasonable grounds that it would be unfair to impose liquidated damages under FLSA). The purpose for the amendment "was to mitigate the harshness of the then-strict liability offense of violating Section 216." *LeCompte v. Chrysler Credit Corp.*, 780 F.2d 1260, 1263 (5th Cir. 1986).

The burden of proving that the two-prong test has been met is upon the employer, 29 U.S.C. § 260 ("if the employer shows to the satisfaction of the Court"); *Thomas v. State of Louisiana*, 348 F.Supp. 792, 796 (W.D. La.1972), who has "the plain and substantial burden of persuading the court by proof that [its] failure to obey the statute was both in good faith and was predicated upon such reasonable grounds that it would be unfair to impose upon [it] more than a compensatory verdict." *Barcellona*, 597 F.2d at 468. The defense requires plain and substantial evidence of at least an honest intention to ascertain what the FLSA requires and to comply with it. *Brock v. Wilamowsky*, 833 F.2d 11, 19 (2d Cir. 1987) (citing *Williams v. Tri-County Growers, Inc.*, 747 F.2d 121, 129 (3d Cir. 1984)); *Barcellona*, 597 F.2d at 468-69). "If an employer suspect[s] that [it is] out of compliance with the FLSA, it cannot act in good faith." *Steele v. Leasing Enters., Ltd.*, 826 F.3d 237, 246 (5th Cir. 2016) (citing *Heidtman v. Cnty. of El Paso*, 171 F.3d 1038, 1042 (5th Cir. 1999)) (alterations in original). The burden is a difficult one to meet; "double damages are the norm, single damages the exception." *Brock*, 833 F.2d at 19 (quoting *Walton v. United Consumers Club, Inc.*, 786 F.2d

303, 310 (7th Cir. 1986)).  Even if the employer carries its burden, the court retains the

discretion to award liquidated damages.  *Hayes v. McIntosh*, 604 F. Supp. 10, 21 (N.D. Ind.

1984); *Thomas*, 348 F. Supp. at 796.

B

Plaintiffs maintain that defendants waived the good faith affirmative defense to

liquidated damages because they fail to plead it in their answer.  In this case, defendants have

attempted to argue a good faith defense in their response to plaintiffs' motion for summary

judgment.  *Cf. Mack v. Avara Cmty. Health Servs., Inc.*, 2016 WL 4801306, at *3 (N.D. Tex.

Feb. 5, 2016) (Solis, C.J.) (granting plaintiff's motion for summary judgment as to liquidated

damages because defendants did not plead good faith as an affirmative defense and made no

attempt to argue good faith); *Herrera v. JK & HE Bus., LLC*, 2016 WL 8193294, at *9 (S.D.

Tex. Oct. 14, 2016) (granting plaintiffs' motion for summary judgment on affirmative

defense of good faith because defendants failed to plead good faith in their answers and did

not oppose summary judgment on the issue).  Because the court holds in favor of the

plaintiffs on this issue, it will consider this defense despite defendants' failure to plead it.

*See Mack.*, 2016 WL 4801306, at *3 ("At the end of the day, this Court has discretion.").

C

Defendants maintain that, around December 2014, Westen contacted Steve Clark,

Esquire ("Clark"), an attorney, and Paychex, defendants' payroll service, regarding Park

Cities Healthcare' pay policies.  Westen avers that she thought that if she paid at least

minimum wage to her domestic service employees, she was not required to pay overtime for

hours over 40 hours per week.  Westen contacted Clark and another attorney in November

2016.  She also accessed the DOL website and attempted to call for guidance.  Finally,

defendants point to division in the lower courts regarding the effective date of the DOL

Amended Regulations, discussed *supra* in § IV, as evidence of the reasonable grounds of

their belief that they did not have to pay overtime.

The court holds that, taking defendants' evidence as true and drawing all reasonable

inferences in their favor, their proof is insufficient to create a genuine issue of material fact.

First, Westen's deposition testimony establishes that she had conversations with attorneys

regarding the FLSA.  But it does not contain any detail about the particular facts or issues

that were discussed, and Westen largely omits detail regarding the advice she received from

counsel.  For example, Westen avers that she contacted an attorney in November 2016

regarding the DOL regulations, but she does not describe the advice she received.  *See*

*Bowrin v. Catholic Guardian Soc'y*, 417 F.Supp.2d 449, 473 (S.D.N.Y. 2006) (granting

summary judgment to plaintiffs on good faith affirmative defense because conversations with

counsel generally about coverage under the FLSA were insufficient evidence of good faith

affirmative defense); *Debejian v. Atl. Testing Labs., Ltd.*, 64 F.Supp.2d 85, 92 (N.D.N.Y.

1999) (granting summary judgment to plaintiff where there was no proof of extent of

defendant's inquiry regarding requirements of the FLSA).  Westen provides no evidence of

the content of particular conversations or memos or emails from counsel.  *See Bowrin*, 417

F.Supp.2d at 473 (granting summary judgment to plaintiff where "[d]efendant produce[d] no

specific evidence of conversations with counsel or work product from counsel" on the

particular FLSA issue).  Nor does she offer evidence that she actually relied on counsel's advice or information from DOL—either in 2014 or in 2016—in deciding not to pay her employees overtime at a premium rate.  *See Debejian*, 64 F.Supp.2d at 92 (granting summary judgment to plaintiffs on good faith defense where defendants failed to offer evidence of reliance counsel when deciding plaintiff was exempt from FLSA).  The court holds that a reasonable jury could not find on the basis of this evidence that Westen acted in good faith when she failed to pay her employees for their overtime work, as the FLSA requires.

Second, defendants point to the uncertainty among lower courts regarding the Amended Regulations as evidence that Westen had reasonable grounds to believe her employees were exempt from overtime protection.  But defendants offer no evidence that they actually relied on the Companionship Services exemption when deciding whether to pay overtime.  Nor do they present proof that an attorney advised them that they fell under the Companionship Services exemption.  Westen testified in her deposition that Clark concurred that defendants were in compliance with the FLSA so long as they paid minimum wage to their domestic service employees.  But the alleged uncertainty regarding the Companionship Services exemption would not give her reasonable grounds to rely on Clark's advice because the advice was not connected to the Companionship Services exemption.  In this case, defendants' evidence at best shows that Westen was ignorant or uncertain of the FLSA's mandates.  But "'[g]ood faith' in this context requires more than ignorance of the prevailing law or uncertainty about its development.  It requires that an employer first take active steps to ascertain the dictates of the FLSA and then move to comply with them."  *Reich v. S. N.E.*

*Telecomms. Corp.*, 121 F.3d 58, 71 (2d Cir. 1997).

Accordingly, the court grants plaintiffs' motion for summary judgment regarding defendants' good faith affirmative defense and holds that defendants cannot avoid an award of liquidated damages based on this defense.

\*   \*   \*

For the reasons explained, the court grants plaintiffs' motion for summary judgment on defendants' liability for FLSA overtime compensation, defendants' affirmative defense of Companionship Services exemption, and defendants' affirmative defense of good faith. The court denies plaintiffs' motion for summary judgment on their FLSA retaliation claim.

**SO ORDERED**.

July 25, 2018.

SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE