IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| CHARLOTTE CARMACK, individually and on behalf of others similarly situated, § § § § § § § § § § § § § § | |
| Plaintiff, | |
| VS. | Civil Action No. 3:16-CV-3500-D |
| PARK CITIES HEALTHCARE LLC, et al., | |
| Defendants. | |

MEMORANDUM OPINION
AND ORDER

Plaintiffs-judgment creditors Charlotte Carmack, Teresa Miller, and Jovan Aniagu (collectively, "plaintiffs") apply a second time for a writ of execution pursuant to Fed. R. Civ. P. 69(a) and move for seizure of what they maintain is a non-exempt asset held by defendant-judgment debtor Sharon Westen ("Westen"). The subject of plaintiffs' application is a residence owned by Westen and located in Texas ("the Property"). Pursuant to the court's June 1, 2023 order, the court is treating this motion as a motion for turnover relief. Having conducted an evidentiary hearing, and for the reasons explained below, the court denies the motion.

I

The court will briefly recount the procedural history of this case and defer a more thorough discussion of the relevant facts and evidence to its analysis below. In August 2018 plaintiffs obtained a judgment against Westen and her codefendant in the principal sum of

$32,323.34, liquidated damages in the sum of $32,323.34, post-judgment interest at the rate of 2.44% per annum, and attorney's fees and costs, to be awarded separately. In October 2018 the court awarded attorney's fees in the sum of $103,429.25, and costs, and ordered that they be paid within 30 days.

As of December 2019, the judgment still had not been satisfied. Accordingly, the court granted plaintiffs' motion for turnover relief, requiring Westen to turn over to plaintiffs any rent paid to Westen by the tenants then living at the Property. But because Westen and the tenants had agreed that the tenants would make rent payments directly to Westen's mortgage company, that order was ineffective in satisfying the judgment.

As a result, in February 2021 plaintiffs applied for a writ of execution and moved for seizure of the Property and of two horses owned by Westen. In *Carmack v. Park Cities Healthcare, LLC (Carmack I)*, 2021 WL 4133494 (N.D. Tex. Sept. 10, 2021) (Fitzwater, J.), the court denied the application and motion for two reasons: First, the court determined that Westen had established that the Property was her homestead and that plaintiffs had failed to prove that Westen had abandoned it as her homestead; accordingly, it was exempt from execution. *Id.* at *6. Second, the court held that because the horses were located in New Hampshire rather than Texas, it lacked jurisdiction to issue a writ of execution as to them. *Id.* at *7.

The judgment still outstanding,[1] plaintiffs apply anew for a writ of execution and

---

[1] Plaintiffs contend that Westen and her codefendant are currently jointly and severally liable to them in the sum of $179,954.12.

move for seizure of the Property, citing new evidence to support their contention that Westen has abandoned it as her homestead. The court is treating the motion as one requesting turnover relief.[2] The court held an evidentiary hearing on July 20, 2023, and the motion is now ripe for decision.

II

The dispositive question is whether plaintiffs have proved by a preponderance of the evidence that they are entitled to relief as to the Property on the basis that it is nonexempt—that is, that it is subject to execution. This question turns on whether Westen has abandoned the Property as her homestead.

As she did in *Carmack I*, Westen maintains that the Property remains her homestead and that plaintiffs have again failed to prove that her moving to New Hampshire has changed the Property's homestead status. Plaintiffs contend that additional evidence, discovered after the court decided *Carmack I*, now supports the conclusion that Westen has abandoned the Property as her homestead. Plaintiffs posit that the Property is no longer exempt from execution.

Because it is undisputed that the Property has previously been designated as Westen's homestead, plaintiffs bear the burden of establishing that Westen has abandoned the Property as her homestead. *See In re Bradley*, 960 F.2d 502, 507 (5th Cir. 2015) (citing *Sullivan v.*

---

[2]A turnover proceeding can be employed to address a judgment creditor's challenge to a judgment debtor's designation of property as her homestead and to aid law enforcement in executing a writ. *See* 9 William V. Dorsaneo III, *Texas Litigation Guide* §§ 132.05(1), 132.10(3)(c)(I) (2023).

*Barnett*, 471 S.W.2d 39, 43 (Tex. 1971)). In Texas, "homesteads are favorites of the law," and homestead protections must therefore be applied liberally. *Id*. A homestead can only be terminated through death, abandonment, or alienation. *In re Perry*, 345 F.3d 303, 310 (5th Cir. 2003). "Abandonment requires cessation or discontinuance of the use of the property coupled with intent to abandon permanently the homestead." *Id.* at 310 n.8. As the court has previously noted, proving abandonment is difficult, generally requiring evidence "undeniably clear and beyond almost the shadow, at least all reasonable ground of dispute, that there has been a total abandonment with an intention not to return and claim the exemption." *Drake Interiors, L.L.C. v. Thomas*, 433 S.W.3d 841, 848 (Tex. App. 2014, pet. denied) (quoting *Gouhenant v. Cockrell*, 20 Tex. 96, 98 (1857)).

Abandonment is a question of fact. *See Gilmore v. Dennison*, 115 S.W.2d 902, 902 (Tex. 1938). Courts consider a variety of factors to determine whether abandonment has been established, but no factor is dispositive, and the factors ultimately must show that there has "been a discontinuance of use of the old home coupled with an intention not to return and use it as a homestead." *In re Comu*, 542 B.R. 371, 386 (Bankr. N.D. Tex. 2015). These factors can include the purchase of a new residence and occupancy and use of that new residence as a homestead; in the case of an out-of-state move, relevant considerations might include voting, obtaining a driver license, registering a vehicle, or opening a bank account in the new state of residence. *Kendall Builders, Inc. v. Chesson*, 149 S.W.3d 796, 809-10 (Tex. App. 2004, pet. denied); *see also Hinton v. Uvalde Paving Co.*, 77 S.W.2d 733, 735-36 (Tex. Civ. App. 1934, writ ref'd).

III

In *Carmack I* the court held that plaintiffs had not met their burden of proving that Westen had abandoned the Property as her homestead. The court summarized plaintiffs' evidence as follows:

> Westen has moved to, and currently resides in, New Hampshire. Westen has changed her vehicle registration and mailing address for her mortgage bills to a New Hampshire address. Westen began leasing the Property to renters on December 15, 2018. At the expiration of the original lease, the renters refused to enter a new lease. Westen and the renters entered an agreement, however, where the renters would remain on the Property and pay Westen's mortgage payments and property taxes. Finally, Westen has made comments on social media that plaintiffs maintain are probative of an intent to abandon.

*Carmack I*, 2021 WL 4133494, at *4.

Comparing the instant case to *Kendall Builders*, the court noted several important differences between the two cases: "[u]nlike in *Kendall Builders*[,] . . . in the instant case there is no evidence of a change of licenses, registering to vote, or opening a joint bank account in New Hampshire." *Id*. At *5. The court also pointed out that cases such as *Hinton* turned on the fact that the homeowner had taken out a mortgage on the property at issue, an overt act that runs contrary to an intent to continue to designate the property as a homestead. *Id*. The court concluded that these were "important facts tending to show a permanent intent to abandon," and that they were not present at the time *Carmack I* was decided. *Id*.

The court concluded that this case was more akin to two cases in which the courts had held that abandonment had not been established. In *Robinson v. McGuire*, 203 S.W. 415,

- 5 -

417 (Tex. Civ. App. 1918, no writ), the court held that the homestead had not been abandoned where the homeowner had moved to Missouri to seek treatment for a disease and additional evidence did not suggest a permanent move out-of-state. In *Union Square Federal Credit Union v. Clay*, 2009 WL 1099434, at *9 (Tex. App. Apr. 23, 2009, no pet.), the court held that the plaintiffs had not proved abandonment because the homeowners had not rented or sold the property and credibly indicated that they wished to continue to use the property as their homestead; the only evidence arguably supporting a finding of abandonment was the fact that the homeowners had allowed their homestead tax exemption to lapse. The court did note, however, that the abandonment question was a close one in the present case. *Carmack I*, 2021 WL 4133494, at *6.

IV

In the instant motion, plaintiffs maintain that new evidence supports their contention that Westen has abandoned the Property as her homestead. They rely on evidence that, since the date the court decided *Carmack I*, Westen has transferred the title of her vehicle from Texas to New Hampshire, acquired a New Hampshire driver license, and opened a bank account in New Hampshire. Plaintiffs also maintain that Westen has become a registered voter in New Hampshire. To support this assertion, plaintiffs have provided a photo of a dog wearing a "NH Votes" sticker.[3] The photo apparently was found on Westen's Facebook

---

[3] Westen objected to these documents at the evidentiary hearing on the ground that they had not been authenticated. Because the court is not relying on these Facebook posts in making its decision, it overrules the objections, without prejudice, as moot. *See, e.g., Inclusive Communities Project, Inc. v. Tex. Dep't of Hous. and Cmmty. Affs.*, 860 F.Supp.2d

page, and it is accompanied by a different photo, also taken from Facebook, purportedly establishing that the dog in the photos belongs to Westen. At the evidentiary hearing, plaintiffs also proffered a page taken from the website of the New Hampshire Department of State showing that, at some point, Westen was a registered voter in New Hampshire.

But Westen addressed each of these documents in her sworn testimony at the evidentiary hearing. As to the vehicle registration and driver license, Westen testified to her understanding that New Hampshire law requires residents to register their vehicles and obtain New Hampshire driver licenses within 30 days. She averred that she obtained these documents only to comply with state law. Westen also testified that the vehicle is now registered in New Hampshire in her husband's name due to a legal issue rendering Westen herself unable to register the vehicle there. As for her voter registration, Westen testified that she became a registered New Hampshire voter by happenstance—she happened upon a local election and, when she voiced her opinion in that election, New Hampshire law provided that she became a registered voter, essentially automatically.

In sum, the court finds that Westen's explanations for these documents are credible. She adequately justified her decision to register her vehicle in New Hampshire and obtain a New Hampshire driver license, and the circumstances of her registering to vote in New Hampshire. Thus while the existence of this new evidence does move this case closer to *Kendall Builders*—in which the court held that the homestead had been abandoned—and

---

312, 317 n.9 (N.D. Tex. 2012) (Fitzwater, C.J.).

arguably make a close question an even closer one, plaintiffs have still failed to satisfy their high burden of establishing Westen's subjective intent to permanently abandon her Texas homestead. The factors on which the court relied in *Kendall Builders*—voting in a new state, obtaining a new driver license, and registering a vehicle in a new state—are only proxies for the ultimate question: whether the homeowner intended to permanently abandon the homestead. *See Comu*, 542 B.R. at 386. And here, the court is not convinced that plaintiffs have proved by a preponderance of the evidence that Westen has such an intent. The property thus remains exempt from seizure, and plaintiffs' motion for turnover relief must be denied.

\* \* \*

There is no question in the court's mind that Westen is taking full advantage of Texas homestead protections to avoid paying a valid judgment. But because Westen has not abandoned her homestead, the Property remains exempt from execution. Accordingly, the court denies the motion for turnover relief.

**SO ORDERED**.

July 31, 2023.

_____
SIDNEY A. FITZWATER
SENIOR JUDGE